# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
| --- | --- | --- |
| In the Matter of the Personal Restraint Petition of | ) ) ) | No. 73580-2-I |
|  | ) | DIVISION ONE |
| BRIAN T. STARK, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | |
|  | ) | FILED: October 17, 2016 |

LEACH, J. — Brian Stark makes three collateral challenges to his convictions for attempted child molestation, first degree child molestation, first degree incest, and third degree child molestation of his stepdaughter. First, he claims that his trial counsel provided ineffective assistance when he did not interview a witness who allegedly could corroborate Stark's testimony. Second, he contends that the trial court's unanimity jury instruction improperly commented on the evidence. Third, he asserts that the statute of limitations bars his conviction for attempted molestation. He also challenges several conditions of his community custody sentence.

Stark does not show that his trial counsel's omission or the challenged jury instruction caused him actual and substantial prejudice. These two claims fail. But the State concedes the statute of limitation claim. Because Stark's conviction for attempted molestation must be vacated and Stark resentenced, we

do not need to decide his challenges to various conditions of his community custody sentence as those are not yet ripe for review.

FACTS

In October 2010, a jury found Stark guilty of attempted first degree child molestation (count I), first degree child molestation (count II), first degree incest (count III), and third degree child molestation (count IV). This court affirmed the convictions on direct review. Stark timely filed this personal restraint petition, his first.

Relevant Facts

C.W. was born in August 1993 to Danelle Stark and Sam Steffey. Danelle met Brian Stark in 1999. They moved in together in January 2000, had a son together in September, and married in April 2001. They first lived in Auburn and then in Renton.

The State based count I on C.W.'s testimony about an incident in the family's Renton home. She stayed home sick from school one day when she was in first grade during the 1999-2000 school year. While she was alone with Stark, he took off her underwear and looked at her vagina.

The family moved to Spanaway, in Pierce County, in August 2000. C.W. testified that Stark molested her four times per week at this home. Because those incidents occurred outside King County, the State did not charge based on

-2-

them, but the trial court admitted evidence of these incidents to show Stark's lustful disposition toward C.W.

The family built a house in Maple Valley in 2003. They stayed in Danelle's parents' home in Renton during construction. Once they moved into the new house in early 2004, C.W. testified that Stark started molesting her again. She reported that this abuse happened once every six months.

C.W. testified about one occasion a few months after they had moved into their new house when she was 10 years old. Stark molested her in a house still under construction. She testified that her cousin Jeffrey, Stark's nephew, was visiting their family. He was a few years older than C.W. She testified that Stark, Jeffrey, and she went for a bicycle ride as the sun was going down. Nearby they saw a half-built house. Stark told Jeffrey to go back to the Starks' house and then took C.W. into the half-constructed house. He took her up the stairs and into a hallway, backed her into a corner, pulled down her pants and underwear, and rubbed her vagina. She did not report the incident to her mother, brother, or Jeffrey because she was afraid of Stark. The State based count II on this incident.

Stark testified that he never rode his bike with C.W. and Jeffrey, never went into the half-built house alone with C.W., and never had any sexual contact with C.W. Danelle testified that Jeffrey occasionally visited them in their new

house but that he did not visit during the first few months they lived there and did not ride a bicycle or have access to one.

C.W. also testified about a different occasion when she was 11 or 12. Stark came into her room while she was on her bed watching television, took off her pants and underwear, and licked her vagina. The State based count III on this incident.

The State based count IV on C.W's testimony that before she started ninth grade Stark pinned her down on a couch, removed her clothing, and tried to have intercourse with her. He gave up when she fought him.

C.W. disclosed Stark's abuse to her family and friends on several occasions.

Danelle testified that when C.W. was 11 or 12 years old, she told Danelle that C.W.'s grandfather talked to her about inappropriate touching, that C.W. thought Stark had touched her body or leg while she slept, but that she might have been dreaming. Her mother did not report the incident because she did not believe C.W. was reporting abuse. C.W. testified that this conversation occurred when she was 7 or 8 years old and that she did not actually think she had been dreaming.

C.W.'s cousin A.H. testified that she was close to C.W. and that C.W. had called her in December 2007 to tell her that Stark was molesting and raping her

-4-

and also that she hated living at home. A.H. told C.W. that she needed to do something about it, and C.W. responded, "Please don't tell . . . . I don't want to get in trouble. I don't want to start family problems." A.H. told C.W. that she had to get her mother, Lori Neilson, C.W.'s aunt, involved. C.W. then disclosed the abuse to Lori. She also disclosed the abuse to Nancy Weiss, her maternal grandmother.

C.W. went to stay with Nancy. During C.W.'s stay, Nancy discussed the abuse with her, telling C.W. that she had to be absolutely sure that everything she said was the truth. C.W. said that it was. C.W. did not give Nancy much detail but said that Stark put his penis inside her. Nancy also testified that C.W. was having a difficult time at home with the many restrictions imposed on her. No one disclosed the abuse to the authorities after C.W.'s disclosure. C.W. returned to Danelle and Stark's home because C.W. missed her mother and brother.

C.W.'s best friend, K.J., testified that on January 1, 2009, early in the morning after a New Year's Eve gathering, she and C.W. were in K.J.'s room playing on the computer. K.J. suggested to C.W. that they visit a "Post a Secret" website. C.W. spent about five minutes writing out her secret on a piece of paper. At K.J.'s urging, she shared it with K.J. The paper read, "He's molested and raped me since I was six. Just don't try to save me. My mom wouldn't listen

-5-

anyways." K.J. asked C.W. who she wrote about, and C.W. started crying. K.J. asked if it was C.W.'s boyfriend at the time, and C.W. shook her head. K.J. asked if it was Stark, C.W. nodded, and they both cried. C.W. asked K.J. not to tell anyone, and K.J. agreed. But K.J. shared what C.W. had disclosed with her mother, Robin Jordan. K.J. testified that C.W. had also shared the information of the abuse earlier with two other friends, Matt and Jake.

Robin talked with C.W. about two weeks later. Robin testified that when she confronted C.W., C.W. immediately broke down and cried. C.W. did not offer details but answered questions about a few specifics. Robin got the impression that C.W. was afraid of what Robin would think.

In April 2009, K.J. and her mother reported C.W.'s disclosures to a school counselor, Michael Hansen. He spoke with C.W. K.J. testified that C.W. cried during the interview. Hansen was a mandatory reporter and notified the police. Hansen testified that he had completed a Child Protective Services report and that C.W. had reported multiple sexual assaults by Stark between the age of 6 and the age of 14. Michael Sutherland, the school resource officer, also interviewed C.W. about the abuse. C.W. did not cry but got emotional several times as if she were about to cry. C.W. gave him the names of several people she had disclosed the abuse to and detailed accounts of several incidences of abuse, though she jumped around chronologically.

C.W. testified that she had disclosed the abuse to her friends Matt and Jake sometime before the incident when Stark molested her on the couch.

Stark testified that he never molested C.W.

Unanimity Instruction

Both parties proposed a unanimity instruction. The first sentence in Stark's proposed instruction, modeled on WPIC 4.25,[1] read, "The State alleges that the defendant committed acts of Child Molestation in the First Degree and Incest in the First Degree on multiple occasions." The State's instruction departed from WPIC 4.25 and read,

> Evidence has been produced suggesting that the defendant committed acts of Child Molestation in the First Degree and Incest in the First Degree on multiple occasions. A separate crime is charged in each count. To convict the defendant on the count of Child Molestation in the First Degree, one particular act of molestation must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. To convict the defendant on the count of Incest in the First Degree, one particular act of sexual intercourse must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of child molestation or incest.

The State explained that it changed the language in the first sentence to address its concern that evidence of acts not charged but admitted for another purpose

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.25, at 110 (3d ed. 2008) (WPIC).

could confuse the jury. Stark's counsel told the court that he had no objection to the change. The trial court adopted the State's proposed instruction.

Jeffrey's Letter

C.W. first reported the incident about the half-built house to the police and the prosecutor on April 23, 2009, including that Jeffrey had been riding bikes with Stark and her just before Stark molested her. She again reported this event on June 24, 2010, in her defense interview with Stark's trial counsel, Brad Meryhew, again mentioning Jeffrey. Stark reviewed that transcript and sent an e-mail to his trial counsel stating, "[A]lso now I don't like how she is trying to get my nephew involved in this. [B]oy!"

At a meeting with Meryhew before trial, Stark and Danelle told Meryhew that he should interview Jeffrey. Stark gave Meryhew Jeffrey's parents' contact information so that Meryhew could contact Jeffrey. Danelle recalls this event. Meryhew said he would put both Jeffrey and his parents on the witness list. Meryhew interviewed Jeffrey's mother, Sharon, and briefly asked her about Jeffrey but did not ask for his contact information.

The State's trial memorandum stated that Jeffrey had been on the bike ride, and C.W. included him in her trauma narrative, referring to him only as her "cousin." Due to late disclosure of possible inconsistent statements made by C.W., the trial court recessed to allow Meryhew to reinterview Robin Jordan and

K.J., who were present when C.W. read her narrative to them at a treatment session. Each witness discussed C.W.'s account of the events in the half-built house and her cousin's presence on the bike ride. Stark read the interview transcripts and e-mailed Meryhew, noting that there were differences in the stories regarding the construction site. During trial, Stark nudged Meryhew during C.W.'s testimony, telling Meryhew to contact Jeffrey. He repeated this request outside of the courtroom but cannot recall Meryhew's response.

Meryhew never contacted Jeffrey for an interview. He stated that he had "a vague idea that when his name came up that there might have been some external barrier to me contacting him, but I really do not know that for sure." He stated that he had no tactical reason not to contact him. Before and during the trial, Jeffrey lived in Washington state and was in constant contact with his parents.

Jeffrey learned that C.W. had included him in her account of the incident in the half-built home. Jeffrey denied his presence during those events. Danelle asked Jeffrey for something in writing, and a few days later she received a letter in an envelope with a return address. It read,

> To whom it may concern,
>
> Approximately when I was 14 or 15 I stayed the night with my uncle Brian and he bought me a baseball mit[t] made by Nike at [T]arget and that night we watched tv and I slept on the couch and the next day I played with my little cousins outside, right out front, what I

remember is Brian mowing the lawn and then I went home. The allegations that [C.W.] made are false because we never went on a bike ride and Brian never told me to go home. There was no home unbuilt that we went to and that is the truth. I will testify under oath that the allegations are false that I was not there and he never said that to me. [Signed Jeff Stark]

In July 2014, Jeffrey died.

## STANDARD OF REVIEW

To succeed on this collateral attack, Stark must establish that a constitutional error occurred that resulted in actual and substantial prejudice or that a nonconstitutional error occurred that caused a complete miscarriage of justice.[2] He must make these showings by a preponderance of the evidence.[3]

## ANALYSIS

Stark first claims that his trial counsel provided ineffective assistance by not investigating and calling a key witness, Jeffrey. He argues that Jeffrey's posttrial statements show that Jeffrey's testimony would have called into question C.W.'s testimony that she rode bikes with him and Stark to a half-built house and thus corroborated Stark's story that the incident never occurred.

If a petitioner collaterally attacking a conviction based on ineffective assistance of counsel satisfies the two-prong test established by Strickland v.

---

[2] In re Pers. Restraint of Grantham, 168 Wn.2d 204, 212, 227 P.3d 285 (2010) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)).

[3] In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

Washington,[4] he meets the prejudice standard for a personal restraint petition.[5] A petitioner receives ineffective assistance of counsel where, due to counsel's deficient performance, a reasonable probability exists that the outcome of the trial would have been different.[6]

Due to the nature of this proceeding, we first consider whether Stark has met the prejudice prong of the Strickland test, a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[7] "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[8] For example, a reasonable probability that the outcome was affected by the error may exist where the error "had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture" or a verdict was otherwise only weakly supported by the record.[9]

Stark claims that his trial counsel's error prejudiced him because had Jeffrey testified consistent with his letter, at least one juror would have

---

[4] 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[5] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[6] In re Pers. Restraint of Crace, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (citing Strickland, 466 U.S. at 694).

[7] Crace, 174 Wn.2d at 840 (quoting Strickland, 466 U.S. at 694).

[8] Crace, 174 Wn.2d at 840 (quoting Strickland, 466 U.S. at 694).

[9] Strickland, 466 U.S. at 695-96.

questioned C.W.'s claims as to count II. He also contends that this juror would then have questioned the remaining counts (III and IV) as well. We disagree.

Stark presented evidence similar to the proposed testimony of Jeffrey to counter C.W.'s testimony that Stark molested her in a half-built house. Stark testified that he had gone into the homes under construction with the children but denied ever going with C.W. alone. Stark also presented the corroborating testimony of Danelle, who testified that Jeffrey was not present during the time C.W. testified he was and that Jeffrey had no access to a bike.

But C.W. gave a detailed account of the event and testified to babysitting children in that house later. The State also presented testimony from many of the witnesses to whom C.W. had reported Stark's abuse. That compelling testimony revealed that she reported the abuse in confidence to those who were close to her, often responding emotionally. It also revealed that C.W. did not wish to report Stark, often asking those she told not to report what she had disclosed to them.

While evidence of Jeffrey's testimony may have been probative, it was cumulative of evidence considered by the jury. The jury did not believe Stark or Danelle. Stark fails to persuade this court of a reasonable probability that the outcome of the trial would have been different with the corroborating testimony of another relative. Because Stark cannot show prejudice, his ineffective

-12-

assistance claim fails. As a result, we need not consider whether he has shown

his trial counsel provided deficient representation.

### Judicial Comment on the Evidence

Stark also claims that the trial court improperly commented on the

evidence with its unanimity jury instruction.[10] The court gave this instruction to

ensure that the jury reached a unanimous decision about the factual basis for

any guilty verdict for the molestation and the incest charges, counts II and III.[11]

The court did not give Stark's proposed instruction that tracked WPIC 4.25.[12]

Instead, the trial court adopted the State's instruction, which included this

challenged statement, "Evidence has been produced suggesting that the

defendant committed acts of Child Molestation in the First Degree and Incest in

the First Degree on multiple occasions."

---

[10] The instruction used by the trial court arose from the case State v. Petrich and is known as a "Petrich instruction." State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled in part by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988). It is designed to ensure a unanimous verdict where evidence indicates that several distinct criminal acts have been committed but the State only charges one count of criminal conduct. WPIC 4.25 cmt. at 110-11.

[11] See State v. Carson, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015).

[12] WPIC 4.25 states,

> The [State] [County] [City] alleges that the defendant committed acts of (identify crime) on multiple occasions. To convict the defendant [on any count] of (identify crime), one particular act of (identify crime) must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of (identify crime).

(Alteration in original.)

The Washington State Constitution states, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."[13] The trial court comments on the evidence "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement."[14] This court looks to see if "the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury."[15] When an instruction resolves a contested factual issue, the court improperly comments on the evidence, effectively relieving the prosecution of its burden to establish each element of a crime beyond a reasonable doubt.[16]

Because Stark alleges a constitutional error, he must show actual and substantial prejudice to get relief.[17] Stark argues that the instruction communicated to jurors that the trial court believed that Stark had committed multiple acts of first degree child molestation and first degree incest. The instruction thus required the jury to be unanimous only as to which time Stark committed the act that constituted the crime.

---

[13] CONST. art. IV, § 16.

[14] State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

[15] Lane, 125 Wn.2d at 838.

[16] State v. Brush, 183 Wn.2d 550, 556-57, 353 P.3d 213 (2015).

[17] In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

We doubt that the trial court commented on the evidence but do not need to decide if it did. Because Stark cannot show actual and substantial prejudice caused by the instruction, his argument fails.

The trial court instructed the jury,

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

We presume that the jury followed this instruction.[18] A reasonable juror, hearing or reading the challenged language in the context of the instructions as a whole, would not believe the trial judge had expressed any view about the truth of any evidence. Consistent with the court's instructions, counsel for the State and Stark each primarily focused on the jury's task of resolving credibility. We do not presume prejudice in a personal restraint hearing. Stark has not identified anything supporting his claim that the challenged words in the unanimity instruction actually influenced the jury. Our reading of the record suggests that they did not.

Stark also raises an ineffective assistance of counsel claim on the basis that his trial and appellate counsel failed to raise this issue at each stage of his

---

[18]State v. Johnson, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).

case. But as discussed above, Stark fails to show actual and substantial prejudice.

Statute of Limitations for Attempted Molestation

The State concedes that it filed count I of the amended information, charging attempted child molestation, after the statute of limitations had run. We remand for vacation of Stark's conviction for count I. And because this will change his offender score, he must also be resentenced.

Additional Terms of Sentencing

Stark challenges his term of community custody for count III as illegal because it goes beyond the statutory maximum sentence term. He also challenges other community custody sentencing conditions as unconstitutional or otherwise illegal. Because the trial court must resentence Stark, these issues are not ripe for review.

CONCLUSION

Stark has not shown that his trial counsel's questioned representation or the trial court's alleged error caused actual and substantial prejudice. But Stark has shown that the statute of limitations barred his prosecution for attempted molestation and his resulting conviction should be vacated. We remand for

proceedings consistent with this opinion. We grant the State's motion to strike

Stark's untimely supplemental declaration filed after oral argument.

_____ Leach, J

WE CONCUR:

_____   _____